IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNIE MERRILL and<br>KIMBERLY MERRILL, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO.<br>304CV-888M |
| WAFFLE HOUSE, INC., | §<br>§<br>§ | |
| Defendant. | §<br>§<br>§ | |

**DEFENDANT WAFFLE HOUSE, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RESPONSIVE TO PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION
AND BRIEF IN SUPPORT**

**TO THE HONORABLE COURT:**

COMES NOW Defendant Waffle House, Inc., by and through counsel of record, and hereby responds in opposition to "Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' Second Requests for Production." For the reasons set forth below, Defendant respectfully requests that Plaintiffs' motion to compel be denied.

## I.   INTRODUCTION

Plaintiffs Johnnie and Kimberly Merrill bring this lawsuit pursuant to 42 U.S.C. §§ 1981 and 2000a, alleging that Defendant Waffle House discriminated against them in public accommodations when a waitress allegedly provided them with poor service at a restaurant in Euless, Texas, during one visit between midnight and 3:00 a.m. on an unspecified night in July 2002. Despite the limited scope of their factual allegations, Plaintiffs persist in seeking nationwide discovery about Waffle House's corporate operations, including such things as the

number of owned and franchised restaurants nationwide, the comparative profitability of restaurants throughout the United States, and the salaries of corporate officers in Georgia. Plaintiffs ask the Court to compel Waffle House to produce a wide range of corporate financial and marketing documents that are of no relevance to Plaintiffs' individual allegations. Because Plaintiffs' requests are overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, call for the discovery of privileged information and documents, and/or are premature, their motion should be denied.

## II.   PLAINTIFFS' REQUESTS FOR PRODUCTION

On or about September 17, 2004, Plaintiffs served "Plaintiffs' Second Requests for Production of Documents to Defendant Waffle House, Inc." These requests included thirteen far-reaching and burdensome requests for documents. Within their brief in support of their motion to compel, Plaintiffs never mention to the Court exactly what information they are seeking, other than to say that they "have requested various financial and marketing documents from Waffle House." ("Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' Second Requests for Production," unnumbered second page). This omission presumably is intended to make their requests seem less onerous. Plaintiffs are specifically requesting the following:

30. Audited financial statements of Waffle House.

31. All documents reflecting projections and forecasts for revenue, gross profit margins, and net profit margins of Waffle House.

32. All documents reflecting actual, year-end revenue, gross profit margins, and net profit margins of Waffle House.

33. Documents sufficient to show the year-end number of owned and franchised restaurants, annual advertising expenses, and training expenses, including breakdowns by training topic or subject.

34. All documents relating to expected returns on advertising campaigns of Waffle House.

35. Documents sufficient to show the salary and other compensation for each of Defendant's top three corporate officers.

36. Documents sufficient to show the amounts Defendant paid in settlement of customer race discrimination complaints or lawsuits, including full identification of each lawsuit.

37. All documents relating to consideration or analysis done by Defendant of customer race discrimination litigation against the Denny's and Cracker Barrel restaurant chains.

38. All documents relating to annual profitability of the Euless Waffle House restaurant and the applicable region in which it is included for accounting purposes.

39. All documents relating to the comparative annual profitability of the Euless Waffle House restaurant with other Waffle House restaurants in the Dallas/Ft. Worth area.

40. All documents relating to the comparative annual profitability of the Euless Waffle House with other Waffle House restaurants in the United States.

41. All documents relating to a comparison or correlation of any or all Waffle House restaurant store profitability to customer race.

42. All documents distributed to corporate employees or to employee-shareholders participating in employee stock ownership plans relating to the financial condition of Defendant.

43. All documents distributed to corporate employees or to employee-shareholders participating in employee stock ownership plans relating to any dividends or payments to shareholders.

("Plaintiff's Second Requests for Production of Documents to Defendant Waffle House, Inc.," pp. 5-6, attached to "Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' Second Requests for Production" as Exhibit A).

In its responses, submitted on or about October 15, 2004, Waffle House objected to Plaintiffs' second set of requests for production as, *inter alia*, overly broad, unduly burdensome,

and not reasonably calculated to lead to the discovery of admissible evidence and, in some instances, protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiffs have never explained their need for each particular request beyond their vague general assertion that financial documents are relevant to the issue of potential punitive damages. Even now that Plaintiffs have submitted their brief, it remains a mystery how each particular request is relevant to their claims.

### III.   ARGUMENT AND CITATION OF AUTHORITY

Plaintiffs' motion to compel should be denied because Defendant's financial and marketing information is not reasonably calculated to lead to the discovery of admissible evidence. It is undisputed that such information is in no way relevant and is not discoverable in regard to potential liability. Although Plaintiffs argue generally that it is relevant to the potential issue of punitive damages, they have not made any showing as to when they were actually in Defendant's restaurant, much less that they may legitimately be entitled to punitive damages. Moreover, Plaintiffs have not made any effort to and cannot show that the thirteen specific document requests at issue are reasonably calculated to lead to the discovery of admissible evidence regarding their individual claims. Absent any such showing, the motion should be denied. Alternatively, Waffle House respectfully requests that the motion regarding the limited category of financial statements be denied as premature, unless or until there is some finding of liability.

A "plaintiff must make some kind of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth." *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D. N.C. 1993). A defendant should not be required to produce financial information absent a showing by the plaintiff of a "real possibility that punitive

damages will be at issue." *Chenoweth v. Schaaf*, 98 F.R.D. 587, 589-90 (W.D. Pa. 1983). *See also John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986). "Moreover, a party seeking discovery must also demonstrate a real and practical need for the information." *McCurdy v. Wedgewood Capital Mgmt. Co., Inc.*, 1998 WL 964185, *10 n.23 (E.D. Pa. Nov. 16, 1998) (citing *Consolidated Rail Corp. v. United States*, 812 F.2d 1444, 1463 (3d Cir. 1987)). Plaintiffs' allegations are insufficient to meet either threshold.

Defendant is not a publicly traded company and, consequently, the confidentiality of its financial documents sought by Plaintiffs is analogous to the privacy rights individuals maintain with their tax returns. Just as tax returns are generally not discoverable, Plaintiffs should not be entitled to Defendant's financial documents. *See DeMasi v. Weiss*, 699 F.2d 114, 119 (3d Cir. 1982) (holding that "Congress has guaranteed that federal income tax returns will be treated as confidential communications between a taxpayer and the government. Indeed, public policy favors the nondisclosure of income tax returns.") (citations omitted); *Credit Life Ins. Co. v. Uniworld Ins. Co.*, 94 F.R.D. 113, 120 (S.D. Ohio 1982); *Tele-Radio Sys., Ltd. v. DeForest Elec., Inc.*, 92 F.R.D. 371 (D.N.J. 1981); *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979); *Maldonado v. St. Croix Discount, Inc.*, 77 F.R.D. 501 (D.V.I. 1978) (same); *Payne v. Howard*, 75 F.R.D. 465 (D.D.C. 1977); *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 563 (N.D. Ill. 1976); *Federal S&L Ins. Corp. v. Krueger*, 55 F.R.D. 512 (N.D. Ill. 1972); *Wiesenberger v. W.E. Hutton & Co.*, 35 F.R.D. 556 (S.D.N.Y. 1964).

Even if the Court were to accept Plaintiffs' very general argument that financial information is discoverable in regard to punitive damages claims, Plaintiffs still have not explained how their specific requests are related to potential punitive damages. Their numerous requests for documents containing Waffle House financial and marketing information "s[eek] a

far greater inquiry" than a "general statement of [Defendant's] net worth." *See Chenoweth*, 98 F.R.D. at 589. Plaintiffs seek, for instance, the intricate details of "[a]udited financial statements of Waffle House;" "[a]ll documents reflecting projections and forecasts for revenue, gross profit margins, and net profit margins of Waffle House;" and "[a]ll documents reflecting actual, year-end revenue, gross profit margins, and net profit margins of Waffle House." ("Plaintiffs' Second Request for Production of Documents to Defendant Waffle House, Inc.," Nos. 30-33). Waffle House objected to these requests as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. These requests seek a far greater inquiry than a general statement of Defendant's worth, and Plaintiffs do not have a need for such detailed, confidential documents.

Plaintiffs also ask for "[a]ll documents relating to expected returns on advertising campaigns of Waffle House" and for "the salary and other compensation for each of Defendant's top three corporate officers," ("Plaintiffs' Second Request for Production of Documents to Defendant Waffle House, Inc.," Nos. 34-35). Waffle House objected to these requests as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Plaintiffs have not directly addressed these objections. These requests do not relate to any information Plaintiffs would need to attempt to prove that they are entitled to punitive damages for their single visit to one Waffle House restaurant.

Plaintiffs next ask for "[d]ocuments sufficient to show the amounts Defendant paid in settlement of customer race discrimination complaints or lawsuits, including full identification of each lawsuit." ("Plaintiffs' Second Request for Production of Documents to Defendant Waffle House, Inc.," No. 36). Waffle House objected to these requests as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and to

the extent that they seek documents and/or information that is subject to the attorney-client privilege and/or the attorney work product doctrine. Furthermore, any purported evidence of settlement agreements or negotiations would be inadmissible under Federal Rule of Evidence 408.[1] Plaintiffs again have not addressed these objections other than with their general claim that "financial documents" are relevant to punitive damages. These requests again seek a far greater inquiry than what Plaintiffs would need to attempt to support a punitive damages claim.

Plaintiffs also seek "[a]ll documents relating to consideration or analysis done by Defendant of customer race discrimination litigation against the Denny's and Cracker Barrel restaurant chains." ("Plaintiffs' Second Request for Production of Documents to Defendant Waffle House, Inc.," No. 37). Waffle House objected to these requests, *inter alia*, to the extent that they seek information protected by the attorney-client privilege and/or the attorney work product doctrine and explained to Plaintiffs that it is not aware of any non-privileged, responsive documents. Plaintiffs again have not addressed Waffle House's response.

Plaintiffs' requests for "[a]ll documents relating to the annual profitability of the Euless Waffle House restaurant and the applicable region in which it is included for accounting purposes;" for "[a]ll documents relating to the comparative annual profitability of the Euless

---

[1] Moreover, any allegations of discrimination at restaurants other than the Euless, Texas Waffle House are irrelevant and inadmissible. *See Bryant v. Food Lion, Inc.*, 100 F. Supp. 2d 346, 370-71 (D.S.C. 2000) (finding testimony of witnesses regarding incidents of discrimination in different locations and involving different actors not relevant to plaintiff's disparate treatment claim) (citing *Myers v. Hose*, 50 F.3d 278, 284 (5th Cir. 1995)), *aff'd*, 8 Fed. Appx. 194 (5th Cir. 2001)). Witnesses who allege that they too were discriminated against by a defendant are not considered similarly situated to the plaintiffs when the alleged discrimination occurs: (1) in different locations; (2) at different points in time; and (3) by different alleged bad actors. *See Bryant*, 100 F. Supp. 2d at 371-72; *Williams v. Sonoco Prods. Co.*, No. 81-1469-0, 1982 WL 423, at **6-7 (D.S.C. Nov. 8, 1982), *aff'd in part*, 738 F.2d 433 (5th Cir. 1984). *See also Lewis v. Sentara Alternative Delivery Sys.*, No. 96-2263, 1998 WL 85293, at *3 (5th. Cir. Mar. 2, 1998) (per curiam) (finding district court properly excluded third party's allegations of her mistreatment by defendant based on her race as unfairly prejudicial).

Waffle House restaurant with other Waffle House restaurants in the Dallas/Ft. Worth area;" for "[a]ll documents relating to the comparative annual profitability of the Euless Waffle House restaurant with other Waffle House restaurants in the United States;" or for "all documents relating to a comparison or correlation of any or all Waffle House restaurant store profitability to customer race," ("Plaintiffs' Second Request for Production of Documents to Defendant Waffle House, Inc.," Nos. 38-41), also seek information that is not legitimately related to attempting to prove entitlement to punitive damages. Once again in response to Defendant's objections that these requests are overly broad, unduly burdensome, and not reasonably related to lead to the discovery of admissible evidence, Plaintiffs have not provided any specific justification for the discoverability of the requested documents beyond their general assertion that financial documents are relevant to punitive damages.[2] Furthermore, in regard to Request for Production No. 41, Waffle House has explained to Plaintiffs that no such documents exist.

Plaintiffs finally request "[a]ll documents distributed to corporate employees or to employee-shareholders participating in employee stock ownership plans relating to the financial condition of Defendant" and "[a]ll documents distributed to corporate employees or to employee-shareholders participating in employee stock ownership plans relating to any

---

[2] In addition, Plaintiffs' attempts at nationwide discovery regarding more than 1,400 restaurants are unwarranted and incredibly burdensome. Courts have routinely denied plaintiffs' efforts to obtain nationwide discovery when the alleged harm occurred in a discrete location. When stores in different districts and regions of a company act with sufficient independence, discovery is confined to the local store and/or district at issue. *See Rodger v. EDS Corp.*, 155 F.R.D. 537, 538-40 (E.D.N.C. 1994) (prohibiting company-wide discovery and noting "[a] trial court should not permit 'fishing expeditions' conducted by Plaintiffs, even in a discrimination case") (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 (11th Cir. 1990) (discovery is properly confined to the local unit of a corporation; the mere possibility that admissible evidence may be uncovered does not entitle a party to unlimited discovery)); *Bryant*, 100 F. Supp. 2d at 370-71 (finding testimony of witnesses regarding incidents of discrimination in different locations and involving different actors does not establish a "pattern and practice" of discriminatory conduct) (citing *Myers*, 50 F.3d at 284); *see also McCoo v. Denny's Inc.*, 192 F.R.D. 675, 687-89 (D. Kan. 2000) (limiting discovery of customer complaints of discrimination to the restaurant at issue).

**DEFENDANT WAFFLE HOUSE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFFS' SECOND REQUESTS FOR PRODUCTION AND BRIEF IN SUPPORT – Page 8**

dividends or payments to shareholders." ("Plaintiffs' Second Request for Production of Documents to Defendant Waffle House, Inc.," Nos. 42-43). Once again, Plaintiffs have not given any specific response to Waffle House's objections that these requests are over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In particular, this is not an employment discrimination case. This information is far beyond any reasonable scope of discovery for a single unidentified visit to a restaurant in 2002. As with Plaintiffs' other requests, these too seek a far greater inquiry than is appropriate in support of Plaintiffs' unsubstantiated punitive damages claims.

In sum, Plaintiffs seek a broad range of financial and marketing documents that are not discoverable without a "some kind of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth." *Blount*, 162 F.R.D. at 105. Disclosure of such information is therefore, at the least, premature at this time. Moreover, even if Plaintiffs had made such a showing, they "s[eek] a far greater inquiry" than a "general statement of [Defendant's] net worth." *Chenoweth*, 98 F.R.D. at 589. Plaintiffs' requests are overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

For these reasons, Defendant Waffle House respectfully requests that " Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' Second Requests for Production" be denied.

Respectfully submitted,

*Tracey T. Barbaree by MB*

Tracey T. Barbaree
Texas Bar Card No. 00783594
Christopher A. McGraw
Georgia Bar No.: 493177
of **Ashe, Rafuse & Hill, LLP**
1355 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060


Mike Birrer
Texas Bar Card No. 00783662
Rebecca Kimmel
Texas Bar Card No. 24027113
of **Carrington, Coleman, Sloman & Blumenthal, LLP**
200 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

*Attorneys for Defendant Waffle House, Inc.*


## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been served on counsel of record for all parties in accordance with Federal Rule of Civil Procedure 5 on November 19, 2004.